## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PRESTON TONY WILLIAMS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-04-768-M** |
| | ) | |
| **RANDALL WORKMAN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 12] and the relevant state court record (hereinafter "Record"). Petitioner has replied to the response [Doc. No. 20], and thus the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

By this action Petitioner challenges his convictions after a jury trial for the felony offense of assault with dangerous weapon, after former conviction of two or more felonies (Count 1), and four misdemeanor offenses: driving a motor vehicle while under influence of drugs (Count 2), reckless driving (Count 3), unlawful possession of drug paraphernalia (Count 4) and resisting an officer (Count 5). Petitioner was sentenced to 20 years imprisonment on Count 1, one year imprisonment on Counts 2, 4 and 5, and 90 days imprisonment on Count 3. The trial court ordered the sentences served concurrently.

Following his convictions, Petitioner filed a direct appeal, raising four propositions of error:

1. The State improperly elected to charge [Petitioner] with the felony charge of assault and/or battery with a dangerous weapon.
2. Insufficient evidence existed to convict [Petitioner] of assault and/or battery with a dangerous weapon.
3. The simultaneous convictions for assault and/or battery with a dangerous weapon, driving while under the influence of drugs, and reckless driving, violated the statutory prohibition on double punishment.
4. Prosecutorial misconduct deprived [Petitioner] of a fair trial.

Record, Ex. A.  The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences in a summary opinion entered April 1, 2003, Case No. F-2002-287.  Record, Ex. 3.  In this habeas corpus action, Petitioner raises the same four grounds raised on direct appeal.  *See* Petition at 2. [Doc. No. 1].[1]  Petitioner states that he has filed no applications for post-conviction relief.  Petition at 3.

Respondent admits that Petitioner has exhausted his state court remedies and that the petition is timely.  Respondent contends Petitioner's malicious prosecution claim (Ground One) raises a state law issue which is not cognizable for habeas review, and alternatively, that the OCCA correctly determined the State had probable cause to charge Petitioner with the felony offense of assault with a dangerous weapon.  Respondent further contends that Petitioner has failed to show that the OCCA's decision with respect to his remaining claims is contrary to or involved an unreasonable application of federal law.

---

[1] Although Petitioner lists his four habeas grounds in his petition, he refers the Court to his attached brief for his supporting facts and arguments.  Doc. No. 3 (hereinafter "Petitioner's Brief").

Discussion

Standard of Review

The undersigned initially notes that in setting forth his habeas claims and supporting argument, Petitioner has essentially copied his direct appeal brief, primarily citing Oklahoma law.  To the extent Petitioner argues that his constitutional rights were violated because "the [S]tate of Oklahoma failed to follow its own laws," in violation of his due process rights, Petitioner's Brief at 11, 32, and 38 (citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980)), such alleged state law errors do not ordinarily warrant federal habeas relief.  As the Tenth Circuit has explained:

> It is fundamental that we do not grant habeas relief for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67(1991). If the state court did not follow its own rules, this error will not give rise to habeas relief unless failure to follow the rules also constituted a violation of due process guaranteed by the federal constitution. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). A petitioner who relies upon the *Hicks* due process analysis carries a heavy burden. He must show that "the deprivation occasioned by the state's failure to follow its own law [is] arbitrary in the constitutional sense; that is, it must shock the judicial conscience." *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999).

*Benson v. Martin*, No. 99-7117, 2001 WL 476573, at *2 (10th Cir. May 7, 2001)[2](parallel citations omitted).

For factual and legal claims that were adjudicated on the merits in the state court, habeas relief may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable

---

[2]Unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. *Williams*, 529 U.S. at 410-11; *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir.), *cert. denied*, 125 S.Ct. 622 (2004).

The fact that the OCCA denied relief to Petitioner in a summary opinion does not affect the deference owed to the state court's results. *Aycox v. Little*, 196 F.3d 1174, 1177 (10th Cir. 1999). *See Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (holding that state court's failure to discuss or even to be aware of federal precedent does not in itself render the decision contrary to federal law); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying the § 2254(d) deferential standard "notwithstanding the [OCCA's] failure to cite or discuss federal case law") (citing *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 10 (2003)). Further, the state court's factual findings are presumed correct and the

burden is on Petitioner to rebut this presumption by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); *Sallahdin v. Gibson*, 275 F.3d 1211, 1222 (10th Cir. 2002).

I.    Improper Charge - Ground One

In Ground One Petitioner claims, as he did on direct appeal, that the State improperly charged him with the felony charge of "assault and/or battery with a dangerous weapon."[3] Petitioner's Brief at 19.  Citing state law and state legislative intent, Petitioner contends that he was the "victim of malicious prosecution by the local law enforcement officials" because, given the facts and circumstances of the case, the State should have only pursued a misdemeanor charge under the "reckless conduct statutes." *Id.*  On direct appeal the OCCA rejected Petitioner's claim that he was charged under the wrong state statute, finding that "the charge of Assault with a Dangerous Weapon (Automobile) is proper when there is probable cause to believe that a motorist used his vehicle to attempt to injure another person."  Record, Ex. 3 at 2 (citing *Luster v. State*, 746 P.2d 1159, 1160 (Okla. Crim. App. 1987)).[4]

Respondent contends that the issue of whether Petitioner was charged under the proper state statute is a matter of state law which is not cognizable on federal habeas

---

[3]As in his direct appeal brief, Petitioner refers in his supporting habeas brief to a conviction for **assault and/or battery** with a dangerous weapon.  *See e.g.*, Record, Ex. A at 7, 12, and 18.  The record is clear, however, that Petitioner was tried and convicted on the charge of **assault** with a dangerous weapon. *See* Record, Ex. 3 at 1 (OCCA Summary Opinion, listing conviction in Count I as "Assault with a Dangerous Weapon" in violation of Okla. Stat. tit. 21, § 645); *see also* Record, Trial Transcript (Tr.), Volume (Vol.) I at 95 (Ex. 8) and Tr.Vol. II (Ex. 9) at 283.  Accordingly, the references herein are to that offense.

[4]In *Luster*, the parties stipulated that Mr. Luster had a blood alcohol content of 0.13 and was driving his vehicle east in the westbound lane of an expressway when he struck three vehicles - injuring all three drivers.  *Luster*, 746 P.2d at 1159-60.  The OCCA found that because there was no evidence presented that Mr. Luster "intentionally directed or propelled his vehicle toward any of the victims," he had been charged under the wrong statute, and the information should have been quashed.  *Id.*

review.  Response at 5 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Respondent

further argues that the prosecutor did not abuse the high level of discretion afforded

prosecutors under federal law.  *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 464

(1996)).[5]

Although a prosecutor's discretion with respect to whether to file charges and

what charges to file is subject to constitutional constraints,[6] it is clear that neither

Petitioner's challenge on direct appeal nor the claim in Ground One of his habeas petition

raises any such viable constitutional claim.  In rejecting Petitioner's claim that he was

improperly charged, the OCCA relied on its own interpretation of state law.  Record, Ex.

3 at 2.  In his habeas petition, Petitioner argues that the OCCA erroneously interpreted

state law.  *See*, e.g., Petition at 21-23 (arguing the intent of the Oklahoma Legislature). [7]

---

[5]In *Armstrong*, the United States Supreme Court held:

> In the ordinary case, so long as the prosecutor has probable cause to believe
> that the accused committed an offense defined by statute, the decision whether
> or not to prosecute, and what charge to file or bring before a grand jury, generally
> rests entirely in his discretion.  *Armstrong*, 517 U.S. at 464 (quotation omitted).

The OCCA has likewise held that "provided a prosecutor has probable cause to believe that the accused committed an offense, the decision of whether to prosecute and of what charge to bring rests generally within the prosecutor's discretion."  *Woodward v. Morrissey*, 991 P.2d 1042, 1045 (Okla. Crim. App. 1999); *see also Funkhouser v. State*, 763 P. 2d 695, 697 (Okla. Crim. App. 1988) ("The filing of a criminal information is a decision that is within the prosecutor's discretion. The prosecutor has the sole authority to decide under which statute to file charges."); *Jones v. State*, 179 P.2d 484, 489 (Okla. Crim. App. 1947) ("[W]e have often held that one committing a crime may violate more than one statute, and it is within the discretion of the county attorney to determine under which statute charges will be preferred.").

[6]Decisions to prosecute "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978) (noting that "an unjustifiable standard such as race, religion, or other arbitrary classification ... may play no part in [the prosecutor's] charging decision").  Here, however, Petitioner asserts no facts which would support a selective enforcement claim.

[7]The crux of Petitioner's habeas challenge to nature of the charge brought against him appears to be his claim that the evidence was insufficient to support his conviction, which argument is raised separately in Ground Two.

It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *See Mabry v. Johnson*, 467 U.S. 504, 507(1984); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 221 (1982). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith*, 455 U.S. at 221. Thus, as Respondent correctly argues, on federal habeas review, this Court may not decide issues of purely state law. *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) ("On habeas review, [] the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court."); *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994) (federal courts "will not second guess a state court's application of or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law"). Although Petitioner disagrees with the OCCA's interpretation of the applicable state law, he fails to cite a United States Supreme Court decision articulating a standard to the contrary, nor does he argue that the OCCA decided his case "differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

In his habeas petition Petitioner attempts to bring his claim within federal law by asserting without factual support that the prosecutor's decision to charge him with a felony rather than a misdemeanor constituted "outrageous government conduct" prohibited by Tenth Circuit law. *See* Petitioner's Brief at 23. The record shows that Petitioner did not raise the substance of such claim on direct appeal, and it is therefore

7

unexhausted.  Nonetheless, the claim may be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).  The authority Petitioner cites - *United States v. Mosley*, 965 F.2d 906 (10th Cir. 1992) and *United States v. Lacey*, 86 F.3d 956 (10th Cir. 1996) - clearly reflects that to the extent there is such a due process defense,[8] it is available only in the most egregious circumstances where the challenged government conduct is "shocking, outrageous, and clearly intolerable."  *Mosley,* 965 F.2d at 910-11 ("The cases on outrageous conduct suggest two factors that form the underpinnings for most cases where the outrageous conduct defense has been upheld: government creation of the crime and substantial coercion."); *see also Lacey*, 86 F.3d at 964.  Petitioner's allegation that the State prosecuted him under the wrong state statute totally fails to demonstrate shocking, outrageous or intolerable government conduct.

For these reasons, the undersigned finds that Petitioner has failed to show that the OCCA's rejection of his state law claim challenging the prosecutor's charging decision was contrary to or an unreasonable application of federal law.  Moreover, the unexhausted claim of outrageous government conduct is without factual support and should be denied on the merits.  Accordingly, Petitioner is not entitled to habeas relief on Ground One.

---

[8]To the extent an outrageous conduct defense exists, it is based on dicta in *United States v. Russell*, 411 U.S. 423 (1973) suggesting that: "we may someday be presented a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction[.]"  *Russell*, 411 U.S. at 431-32.  *See Mosley*, 965 F.3d at 909; *Lacey*, 88 F.3d at 965-64

II.    <u>Sufficiency of Evidence of Assault with a Deadly Weapon - Ground Two</u>

Petitioner's second ground for relief is based on his claim that the evidence at trial was insufficient to support his conviction for assault with a dangerous weapon. Petitioner's Brief at 24.  Petitioner specifically argues that the State failed to prove the requisite element of intent beyond a reasonable doubt.  Petitioner's Brief at 24-25.  In addressing this claim on direct appeal, the OCCA held that "the eyewitness testimony, and inferences which can reasonably be drawn therefrom, supported the jury's finding that [Petitioner] intentionally drove his vehicle toward a pedestrian with the intention of causing bodily harm."  Record, Ex. 3 at 2 (citing *Taylor v. State*, 881 P.2d 755, 757-78 (Okla. Crim. App. 1994) and *Spuehler v. State*, 709 P.2d 202, 203 (Okla. Crim. App. 1985)).

Clearly established Supreme Court precedent provides that in reviewing the sufficiency of the evidence on a habeas corpus petition, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* This Court's review under this standard is "'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Messer v.*

*Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).  Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction.  *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

An even more limited review is required by 28 U.S.C. § 2254(d).  *See Valdez v. Ward*, 219 F.3d 1222, 1237 (10th Cir. 2000).  Where, as here, a habeas petitioner's sufficiency of the evidence challenge has already been decided on the merits in state court, a federal court may not grant habeas relief unless the result reached by the OCCA was contrary to or involved an unreasonable application of *Jackson*.  *See Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003).  It is apparent that the OCCA relied on state case law, specifically, *Spuehler,* that clearly applies the *Jackson v. Virginia* standard of review.  *See Valdez v. Gibson*, 219 F.3d 1222, 1238 (10th Cir. 2000) (recognizing that Oklahoma case law follows the *Jackson v. Virginia* standard for reviewing sufficiency of the evidence claims).  Thus, the OCCA applied the appropriate standard set out by the Supreme Court for determining the sufficiency of the evidence and therefore, the decision of the OCCA is not contrary to Supreme Court law.  The state court's decision has therefore been reviewed to determine whether the conclusion that the evidence was sufficient constituted an unreasonable application of *Jackson v. Virginia*.

In considering whether the OCCA's decision was an unreasonable application of federal law, this Court must consider the substantive elements of the crime as set forth under Oklahoma law.  *Jackson*, 443 U.S. at 309, 324 n.16.  *See also Wingfield v. Massie*,

10

122 F.3d 1329, 1332-34 (10th Cir. 1997) (applying Oklahoma law in habeas action challenging the sufficiency of the evidence).  The elements of assault with a dangerous weapon are set forth in Oklahoma's pertinent uniform jury instruction:

> No person may be convicted of assault with a dangerous weapon unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>
> First, an assault;
> Second, upon another person;
> Third, with a sharp/dangerous weapon;
> Fourth, without justifiable or excusable cause;
> Fifth, with intent to do bodily harm.

Record, Ex. 5 (Oklahoma Uniform Jury Instructions (OUJI), Crim. 2d, 4-12); *see also* Okla. Stat. tit. 21, § 645.  In Oklahoma, an assault is defined as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another."  Okla. Stat. tit. 21, §641.  The OCCA has held that "a defendant's intent can be inferred from circumstantial evidence."  *Romano v. State*, 909 P.2d 92, 119 (Okla. Crim. App. 1995).

The evidence at the trial was that during the early morning hours of February 2, 2001, Chickasha police officer Brad Crawford was called to the Grady county jail concerning an inmate who had fallen.  Record, Tr.Vol.I at 107.  As Crawford's patrol car, an ambulance and a fire rescue unit drove east on Choctaw Avenue, a white vehicle driven by Petitioner came from behind and passed them.  Tr.Vol.I at 107-08, 114. Crawford testified that the white vehicle then did a U-turn in front of them, proceeded west on Choctaw back toward the three vehicles and passed them again. Tr.Vol.I at 110. The patrol car, ambulance and rescue unit reached the jail and parked in front with the rescue unit parked parallel to the roadway, partially in an angled parking area. Tr.Vol.I

11

at 111.[9]  Crawford testified that as he exited his car, he saw the white vehicle make another turn and "cut[] donuts in the street."  Tr.Vol.I at 112.  Crawford further testified that he watched the white car drive toward the parked vehicles, noticing that the white car was at least partially traveling in the wrong lane.  Tr.Vol.I at 113.  Crawford saw that Petitioner's window was down and he heard Petitioner screaming out the window as he drove toward the rescue unit, coming within inches of hitting John Carpenter, a paramedic.  *Id.*  Crawford testified that if Carpenter had not leaned out of the way, he would have been hit.  Tr.Vol.I at 151.

Carpenter, a paramedic with the Chickasha Fire Department, testified that just after he had exited the rescue unit, he saw the white vehicle coming toward him.  Tr.Vol.II at 200-04.  Carpenter testified that as the white vehicle drove closer, he could see that Petitioner was looking directly at him as he drove toward him.  *Id.* at 204.  According to Carpenter, he had to "turn sideways and get up as far against my vehicle as I could . . . . And that vehicle was probably within six inches of me.  *Id.* at 204.[10]

Petitioner's theory of defense was that he had no intentions to hit or injure anyone the night of February 2, 2001.  Petitioner testified about certain medical problems, such as an astigmatism which does not allow both eyes to focus in the same direction, and the

---

[9]Both the prosecutor and defense counsel asked detailed questions about the positioning of each of three vehicles with respect to the parking lot and the street.  However, it was clear that only a portion of the rescue unit extended into the street.

[10]Officer Crawford followed Petitioner in his patrol car and after a pursuit that reached up to 90 miles per hour, Petitioner lost control of his vehicle, exited the vehicle and ran on foot, and Crawford followed Petitioner in his patrol car.  Tr.Vol.I at 114-16.  After Petitioner was placed in handcuffs, he was taken to a local hospital where he was treated for minor injuries and a blood test was given.  Tr.Vol.I at 118-20, 154.  At trial defense counsel stipulated that OSBI reports showed that the Petitioner's blood tested positive for cocaine, and residue in a pipe found in the vehicle Petitioner was driving also tested positive for cocaine.  Tr.Vol.I at 170.

fact that he was HIV positive.  Tr.Vol.II at 220, 222.  He further testified that he had been in Anadarko visiting friends earlier in the evening and that at approximately 2 a.m., he left for Oklahoma City but decided to stop in Chickasha to visit some relatives.  Tr.Vol.II at 223. Petitioner testified that he stopped at a convenience store in Chickasha and recognized a man in the parking lot, who then got into Petitioner's car and offered Petitioner a hit of crack (cocaine) from his pipe. Tr.Vol.II at 225.  Petitioner testified that he tried the cocaine, that it affected him almost immediately, and that when he declined to buy any cocaine, the man threatened Petitioner.  Tr.Vol.II at 226.  According to Petitioner, as he began driving, he thought the man was following him, and he either intended to go to the police for help, or return to Anadarko.  Tr.Vol.II at 227.  Petitioner admitted that he was driving under the influence of cocaine and that he was driving erratically; he thought he was in danger and was screaming "in hopes that the police would follow...." Tr.Vol.II at 227-29.  Petitioner testified that as he neared the parked emergency vehicles, he thought he was driving in a "big parking lot" and had "no intentions of hitting anybody." Tr.Vol.II at 230.  During  cross-examination, the State questioned Petitioner about the five prior felonies to which he had admitted on direct examination and established that Petitioner had been released from prison two days before the driving incident.  Tr.Vol.II at 244-45; State's Exhibit 11.

In support of his claim that the State failed to prove the element of intent, Petitioner argues that Carpenter's testimony that Petitioner looked straight at him as he drove in his direction failed to prove intent.  Petitioner's Brief at 28.  He refers to his medical condition,  astigmatism, and further asserts that "one would hope that a driver

13

would be looking the direction he was driving." *Id.* at 29.  He also claims that because

he was under the influence of cocaine, he could not have formed the requisite intent to

assault Carpenter, a person he did not know before the incident.  *Id.*

In a sufficiency of the evidence challenge, a federal habeas court does not weigh

the evidence or assess the credibility of witnesses.  *See Messer*, 74 F.3d at 1013.  Rather,

credibility determinations are reserved for the jury, and this Court must presume all such

determinations were resolved in favor of the prosecution.  *Jackson v. Virginia*, 443 U.S.

at 326.  Here, the jury was entitled to weigh the inferences from the facts presented.

Although Petitioner suggests that a different inference could be drawn from the facts, the

jury was not required to believe his explanation of the evidence.  Viewing the evidence

in the light most favorable to the prosecution, a rational jury could have reasonably

inferred from the evidence that Petitioner intended to drive his vehicle in such a manner

as to attempt bodily harm on John Carpenter.   Thus, the undersigned finds that the

OCCA's adjudication of this issue was not contrary to or an unreasonable application of

*Jackson v. Virginia*, *supra*.  Petitioner is consequently not entitled to habeas relief with

respect to Ground Two of the petition.

In a related contention, Petitioner asserts that because there was insufficient

evidence of intent to support submitting the felony charge of assault with a dangerous

weapon to the jury, the trial court erred by failing to give an instruction on a lesser

included offense.  Petitioner's Brief at 31.

Respondent contends that this Court may not review Petitioner's claim regarding

the failure to give a lesser included offense instruction because such claim was not raised

14

on direct appeal and is therefore not exhausted. Response at 16. Respondent further argues that this claim, if now presented to the OCCA, would be procedurally barred pursuant to an independent and adequate state procedural rule and that the claim does not involve an issue which would satisfy the fundamental miscarriage of justice exception to the procedural bar doctrine. *Id.* at 17 (citing Okla. Stat. tit. 22, § 1086). Notwithstanding Respondent's exhaustion and procedural bar arguments, the undersigned finds that this claim "may be more easily and succinctly" denied on the merits. *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000). *See also* 28 U.S.C. § 2254(b)(2) (permitting denial of relief on merits of unexhausted claim).

The Tenth Circuit has made it clear that the failure of a state court to give a lesser included offense instruction in a non-capital case, whether or not warranted, never raises a federal constitutional question. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) ("Our precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.") (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)); *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) ("[A] petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included instruction even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.") (quotation omitted); *see also Hoskins v. Hargett*, No. 00-5063, 2000 WL 1616206 at *2 (10th Cir. Oct. 30, 2000) ("[W]e have held a petitioner in noncapital cases is not entitled to a lesser-included offense instruction, regardless of whether we believe sufficient

evidence supports it.")  Therefore, the undersigned finds that this claim is without merit and Petitioner is not entitled to habeas relief on this basis.

Petitioner's "Motion for Leave to Augment Propositional Argument No. 2"

On February 22, 2005, after Respondent filed a response to the instant petition, Petitioner moved for leave "to amend by augmentation" his sufficiency of the evidence claim in Ground Two, in order to add a challenge to the first three elements of assault with a dangerous weapon, challenges he did not raise on direct appeal.  Doc. No. 26 (Petitioner's Motion).  Respondent has not filed an objection to Petitioner's motion.

Under the terms of 28 U.S.C. § 2244(d)(1)(A), Petitioner's conviction became final for purposes of habeas review on June 30, 2003.  *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (conviction final after 90-day time period for filing petition for writ of certiorari expires).  Although Petitioner filed his petition timely, by the time he filed his motion requesting to add new claims, the one-year limitation period in § 2244(d)(1)(A) had expired.  Thus, Petitioner's proposed claims are time-barred unless the claims "relate back" to the date the initial petition was filed.

Whether an amended habeas petition relates back to an initial petition for timeliness purposes is governed by Federal Rule of Civil Procedure 15(c).  *See* 28 U.S.C. § 2242.  Pursuant to Fed. R. Civ. P. 15(c)(2), an untimely amendment relates back to the date of the timely filed petition provided the claim asserted in the proposed amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  According to the United States Supreme Court, in the habeas corpus context, the Rule 15 "relation back" provision is to be strictly construed, in light

16

of "'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" *Mayle v. Felix*, __U.S.__, 125 S.Ct. 2562, 2570 (2005) (citation omitted); *see also United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (noting that an overly broad interpretation of the Rule 15 term "occurrence" in the context of habeas proceedings "would be tantamount to judicial rescission of Antiterrorism and Effective Death Penalty Act "AEDPA's" statute of limitations period"). Accordingly, amended habeas corpus claims generally must arise from the "same core facts," and not depend upon events which are separate both in time and type from the events upon which the original claims depended. *Mayle*, 125 S.Ct. at 2570 (disallowing relation back, based on finding the petitioner's challenges to the videotaped witness testimony raised in his original petition and to his own pretrial interrogation were discreet episodes occurring at different times and places).

As previously discussed, in his petition Petitioner challenges the sufficiency of the evidence of assault with a dangerous weapon, limiting his challenge, as he did on direct appeal, to the element of intent. By his proposed amendment, Petitioner challenges the sufficiency of the evidence in relation to three other elements relating to the same offense. The undersigned finds that such amendment is arguably based on a common "'core of operative facts' uniting the original and newly asserted claims," *Mayle*, 125 S.Ct. at 2572, and therefore relates back to the date of the original petition. Moreover, Respondent has addressed the sufficiency of the evidence claim raised in the petition and the evidence presented at trial relating to that element, and in doing so, has essentially addressed the evidence supporting each element of the offense. Under these

circumstances, it is recommended that Petitioner's motion be granted and his additional claims considered. *See also Espinoza-Saenz*, 235 F.3d at 505 (holding that untimely amendment to § 2255 motion "which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion, may in the District Court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case") (citation omitted).

In his motion to amend, Petitioner recognizes that on direct appeal he failed to challenge the sufficiency of the evidence with respect to the three elements he now wishes to challenge.[11] Thus, even though these claims are deemed timely, the new issues are technically unexhausted. Notwithstanding exhaustion and procedural default issues,[12] these challenges to the sufficiency of the evidence may be easily denied on the merits. 28 U.S.C. § 2254(b)(2); *Romero v. Furlong*, 215 F.3d at 1111.

Because Petitioner's additional claims have not been adjudicated on the merits in state court proceedings, the deferential standard in § 2254(d) does not apply. *Hale v. Gibson*, 227 F.3d 1298, 1334 (10th Cir. 2000) (Because Hale's claim of insufficient evidence was not adjudicated on the merits in state court proceedings, the new standard

---

[11]Petitioner attributes this omission to his trial and appellate counsel, another claim which has not been raised in the state courts. However, Petitioner's motion does not raise a claim of ineffective assistance of trial and appellate counsel, and the Court should decline to liberally construe Petitioner's motion as raising such a claim. Unlike Petitioner's related claims challenging the sufficiency of the evidence of assault with a dangerous weapon, any ineffective assistance of counsel claim would be based on an entirely separate legal theory of relief and would therefore be a "new" claim for purposes of Rule 15(c)(2). Therefore such claim would not relate back to the initial petition. *Mayle*, 125 S.Ct. at 2571, 2574; *Espinoza-Saenz*, 235 F.3d at 505.

[12]*See* Okla. Stat. tit. 22, § 1086 (requiring that grounds for relief be raised on direct appeal).

articulated in § 2254(d) does not govern our review.").  In this situation, the Court should apply a *de novo* standard to issues of law and mixed questions of law and fact.  *See Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999).[13]  As discussed previously, when reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.

In his motion, Petitioner alleges that the State failed to prove (1) an assault and battery, (2) upon another person, (3) with a dangerous weapon.  Petitioner's Motion at 1. The only factual support he gives for these additional claims is that " at trial there was no evidence of the slightes[t] degree of 'contact' with the victim by his [] automobile...." *Id.*

With respect to the first element, Petitioner's assumption that the State had to prove "contact" with another person is mistaken.  As previously noted, Petitioner was tried and convicted for *assault* with a dangerous weapon, not assault and battery with a dangerous weapon.  Under Oklahoma law, an assault is defined as "any willful and unlawful attempt or offer to do a bodily hurt to another with force or violence."  OUJI, Crim. 2d, 4-1; *see also* Okla. Stat. tit. 21, § 641.  As discussed, the evidence at trial shows that Petitioner intentionally swerved toward the rescue unit and barely missed hitting

---

[13]In *Hooks*, the Tenth Circuit stated:  "In the absence of a state court adjudication on the merits we believe we must apply the standard of review that predated the recent amendments to § 2254.  Prior to AEDPA, we reviewed *de novo* both pure questions of law and mixed questions of law and fact."  *Hooks*, 184 F.3d at 1223 (citation omitted).

John Carpenter with his vehicle.  Consequently, there was sufficient evidence to support the jury's finding that Petitioner committed an assault.

As to the Petitioner's challenge to the evidence that he assaulted "another person," John Carpenter specifically testified that as he exited the rescue unit, Petitioner was looking directly at him as he drove his vehicle toward Carpenter and that he had to stop and press against the pickup to avoid being hit, and even then, Petitioner passed within six inches of him.   Tr.Vol.II at 204.   Thus, the State proved that the assault was committed against Mr. Carpenter, another person.

Finally, the State met its burden of proof with respect to the element "dangerous weapon."   Under Oklahoma law, "[a]n automobile, when used in such a manner as is likely to produce death or great bodily harm, is a dangerous weapon."  *Matin v. State*, 333 P.2d 585, 590 (Okla. Crim. App. 1958).  The record reflects that Petitioner was driving his vehicle in an erratic manner, and swerved toward the rescue unit, coming close enough to Mr. Carpenter that he essentially had to step back, or dodge, to avoid being hit by the vehicle.   Clearly, the evidence shows that the automobile being driven by Petitioner "was a dangerous weapon by reason of the manner in which it was being driven." *Matin*, 333 P.2d at 591.

Thus, the undersigned finds that the record, taken in the light most favorable to the State, shows that a reasonable jury could find beyond a reasonable doubt that Petitioner assaulted another person with a dangerous weapon, an automobile. *Jackson*, 443 U.S. at 319.  Accordingly, Petitioner is not entitled to habeas relief on the additional

claims raised in his motion to amend challenging the sufficiency of the evidence in Count One.

III.    Double Jeopardy - Ground Three

In his third ground for relief Petitioner alleges that his convictions on three separate offenses violate the Fifth Amendment's prohibition against double jeopardy and the Oklahoma's statutory prohibition against double punishment found in Okla. Stat. tit. 21, §11.[14]  Petitioner argues that the offenses of assault with a dangerous weapon (Count 1), driving while under the influence of drugs (Count 2) and reckless driving (Count 3) occurred as part of one continuous transaction.  Petitioner's Brief at 33-34.  On direct appeal, the OCCA found neither "double jeopardy [n]or double punishment error." Record, Ex. 3 at 2.

The federal double jeopardy clause prohibits "multiple punishments for the same offense." *Brown v. State of Ohio*, 432 U.S. 161, 165 (1977) (citations omitted).  On review of habeas claims involving multiple punishment, this Court determines only whether the sentencing court has imposed greater punishment than the legislature intended.  *See Missouri v. Hunter*, 459 U.S. 359, 365 (1983).  *See also Cummings v. Evans*, 161 F.3d 610, 614 (10th Cir. 1998) ("[W]hen a course of criminal conduct constitutes a violation of two statutory provisions, the test to determine whether the punishments are 'multiple,' in violation of the Double Jeopardy Clause, is 'essentially one of legislative intent.'") (quoting *Ohio v. Johnson*, 467 U.S. 493, 499 (1984)).  When multiple charges involve

---

[14]Section 11 provides: "[A]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, . . . but in no case can it be punished under more than one. . . ."  Okla. Stat. tit. 21, § 11.

"distinct and separate elements," the Court can infer that the "Oklahoma legislature intended different offenses and punishments . . . ." *Dennis v. Poppel*, 222 F.3d 1245, 1252 (10th Cir. 2000).

In this case, the OCCA held that "[e]ven though the charges of Driving Under the Influence of Drugs, Reckless Driving, and Assault with a Dangerous Weapon arose from a single transaction, each required proof of a fact that the others did not; the three offenses are drawn from discrete events, and are not integral parts of one another." *Id.*, (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932); also citing *Turner v. State*, 786 P.2d 1251, 1253 (Okla. Crim. App. 1990) and *Davis v. State*, 993 P.2d 124, 126-27 (Okla. Crim. App. 1999)).  The Court further stated "[Petitioner's] decision to drive after admittedly smoking crack cocaine did not give him *carte blanche* to commit any number of intentional or reckless acts while behind the wheel."  *Id.* at 2-3 (citing *Hill v. State*, 511 P.2d 604, 606 (Okla. Crim. App. 1973)).

Under the standard established in *Blockburger* for the review of constitutionally-based double jeopardy challenges, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304.  The *Blockburger* standard is satisfied if the state statutes contain dissimilar elements.  Here, the OCCA's determination that Petitioner's convictions on the three challenged offenses did not violate federal double jeopardy principles is reasonable.

The elements of assault with a dangerous weapon are (1) an assault; (2) upon another person; (3) with a dangerous weapon; (4) without justifiable or excusable cause; and (5) with intent to do bodily harm.   Record, Ex. 5 (Jury Instruction No. 18).   The offense of driving under the influence of drugs includes the following elements (1) driving; (2) a motor vehicle; (3) on a highway; (4) while under the influence of any intoxicating substance other than alcohol which may render a person incapable of safely driving a motor vehicle.   Record, Ex. 6 (Jury Instruction No. 21).   For the offense of reckless driving the State must prove the following elements:

> (1) driving;
> (2) a motor vehicle;
> (3) in a careless or wanton manner;
> (4) without regard for the safety of persons or property and exceeded the speed that a careful and prudent person would have considered reasonable and proper having due regarding for the traffic, surface, and width of the highway, and other conditions and that exceeded the speed that a careful and prudent person would have considered reasonable and proper in order to stop within the assured clear distance ahead.

Record, Ex. 7 (Jury Instruction No. 22).   Application of the *Blockburger* test reveals that each of the above offenses requires proof of different factual elements that are not shared by the other two offenses.   Assault with a dangerous weapon requires proof of an assault, driving under the influence of drugs requires proof of driving of under the influence of drugs which may render a person incapable of safely driving, and reckless driving requires proof of driving in a careless or wanton manner.   The record clearly reflects evidence of each of these separate elements.   Petitioner admitted that he was driving under the influence of drugs and that he was driving recklessly.   Tr.Vol.II at 233.   As previously discussed, the State presented sufficient evidence that Petitioner assaulted

John Carpenter.  Tr.Vol.II at 204-205.  The OCCA's determination - that the three offenses "each required proof of a fact that the others did not" and that the offenses were drawn from discrete events rather than integral parts of one another - was not contrary to or an unreasonable application of the *Blockburger* standard or other federal law.

Petitioner also alleges that the OCCA erred in finding that his convictions do not violate Oklahoma's statutory double punishment provision, Okla. Stat. tit. 21, §11.  Under state law, analysis under Okla. Stat. tit. 21 § 11 (2001) is "a separate matter, not involving double jeopardy issues." *Davis v. State of Oklahoma*, 993 P.2d 124, 125 (Okla. Crim. App. 1999).  Even if the multiple sentences were prohibited under Section 11, the violation of state law would not justify federal habeas relief.  In a similar case involving an Oklahoma inmate's habeas claim that his convictions violated Oklahoma's statutory double punishment provision, the Tenth Circuit Court of Appeals found in an unpublished opinion that "this issue is a matter of state law that is not cognizable in a federal habeas action." *Howell v. Kaiser*, No. 01-7033, 2002 WL 89930, *2 (10th Cir. Jan. 24, 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Accordingly, Petitioner fails to show that he is entitled to habeas relief on the basis of a violation of a state statute.

In sum, the OCCA's decision that Petitioner's three convictions do not violate federal double jeopardy principles or Oklahoma's statutory double jeopardy provision is not contrary to or an unreasonable application of clearly-established Supreme Court jurisprudence, and Petitioner is not entitled to habeas relief with regard to this claim.

IV.   <u>Prosecutorial Misconduct - Ground Four</u>

In his last ground for relief, Petitioner claims that several instances of prosecutorial misconduct deprived him of a fair trial.   Petitioner claims that the prosecutor (1) purposely interjected evidence of another crime; (2) commented on Petitioner's veracity; (3) interjected irrelevant comments and questions during cross-examination of Petitioner; and (4) invoked societal alarm.   Petitioner's Brief at 36-42.   On direct appeal, the OCCA concluded that Petitioner's prosecutorial misconduct claims "d[id] not warrant relief, even when considered cumulatively," further finding that the evidence was sufficient to sustain the jury's verdict on all charges, and noting that the jury recommended the minimum sentence on the one felony count Petitioner had contested, assault with a dangerous weapon.   Record, Ex. 3 at 3.

The Tenth Circuit has held that unless the comments of a prosecutor violate a specific constitutional right, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).   *See Brecheen v. Reynolds*, 41 F.3d 1343, 1355 (10th Cir. 1994); *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990). In *Donnelly*, the Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Donnelly*, 416 U.S. at 642-48.   Under this test, it is not enough for Petitioner to show that the remarks were undesirable or even universally condemned. *Id.* at 642-43.   Rather, the relevant question is whether the remarks so infected the trial

with unfairness as to make the resulting conviction a denial of due process.  *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986).  As the Tenth Circuit Court of Appeals explained:

> To view the prosecutor's statements in context, we look first at the strength
> of the evidence against the defendant and decide whether the prosecutor's
> statement[s] plausibly could have tipped the scales in favor of the
> prosecution.  We also ascertain whether curative instructions by the trial
> judge, if given, might have mitigated the effect on the jury of the improper
> statements.  When a prosecutor responds to an attack made by defense
> counsel, we evaluate that response in light of the defendant's argument.
> Ultimately, we must consider the probable effect the prosecutor's [conduct]
> would have on the jury's ability to judge the evidence fairly.

*Smallwood v. Gibson*, 191 F.3d 1257, 1276 (10th Cir. 1999); *see also Darden*, 477 U.S. at

182 (when substantial evidence of guilt exists, the likelihood of improper influence on

the outcome is diminished).  Each of Petitioner's claims of prosecutorial misconduct has

been addressed in turn.

A.  <u>Comments on Other Crimes Evidence</u>

Petitioner alleges that during cross-examination, the prosecutor asked him a

question that purposefully interjected evidence of another crime.  The prosecutor

questioned Petitioner about whose car he was driving at the time of the crimes, and

Petitioner stated that he was driving a rental car that belonged to a friend of his.  Record,

Tr.Vol.II at 235.  In response, the prosecutor asked whether Petitioner was aware "that

they filed a report saying it was unauthorized use...."  *Id.*  Defense counsel moved for a

mistrial or that the jury be admonished to disregard the testimony.  *Id.*  The trial judge

declined to order a mistrial but admonished the jury to disregard the question and

Petitioner's answer.  *Id.*  The OCCA specifically found that "t]he prosecutor's reference

to other bad acts . . . was cured by the trial court's admonishment to the jury...."  Record, Ex. 3 at 3 n.1.

The judge instructed the jury to disregard the improper statement, and the jurors presumably complied.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").  Thus, Petitioner fails to show that the prosecutor's question deprived him of a fair trial.  Petitioner is not entitled to habeas relief on this claim.

B.  <u>Comments on Petitioner's Veracity</u>

Petitioner alleges that the prosecutor improperly commented on his veracity in two instances.  First, he alleges that the prosecutor began cross-examination of Petitioner with the following prejudicial statement:

> Mr. Williams, I've got to hand it to you.  I've been doing this eight or nine years.  That's one of the more creative and entertaining stories I've every heard.

Record, Tr.Vol.II at 235.  Second, Petitioner alleges that the prosecutor improperly commented on his veracity during closing argument.  As the prosecutor discussed the element of intent to do bodily harm concerning Count 1, he reminded the jury to "look at all the facts in the case," including Petitioner's testimony.  Record, Tr.Vol.II at 262. He then asked the jury "'Can you believe a thing he told you on the stand?"  The Prosecutor then commented that Petitioner was "very creative."  *Id.*

The OCCA found that there was no objection to the prosecutor's characterization of Petitioner's testimony and the statements "did not amount to plain error, considering that [Petitioner] conceded guilt on most of the charges," and further noted that, "much

of his testimony consisted of colorful background information having no real bearing on the issues in the case." Record, Ex. 3 at 3 n.1.

The prosecutor's comments arguably fall within the "reasonable amount of latitude" a prosecutor is given in drawing inferences from the evidence during closing summation. *See Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998). In any event, viewing these statements in the context of the entire trial, and considering the isolated nature of the statements in the context of the prosecutor's entire closing argument, the statements, even if improper, did not cause the jury to stray from its responsibility to fairly judge the evidence. In fact, the prosecutor reminded the jury to consider all of the evidence in weighing the credibility of Petitioner's testimony. The undersigned finds that Petitioner has not shown that these comments so infected the trial with unfairness as to result in a denial of due process.

C. <u>Improper Impeachment of Petitioner</u>

Next, Petitioner alleges that he was prejudiced when the prosecutor referred to a lawsuit Petitioner filed against the county for failure to treat his HIV status with proper medication. Record, Tr.Vol.II at 246-47. Defense counsel objected and moved for a mistrial, both of which were overruled. *Id.* at 247. When reviewing this claim, the OCCA found that the prosecutor's questions about Petitioner's lawsuit "were directed at a specific instance of conduct affecting [Petitioner's] credibility" as allowed by the Oklahoma Evidence Code. Record, Ex. 3 at 3 n.1 (citing Okla. Stat. tit. 12, § 2608(B)(1)).

The undersigned finds that the prosecutor's questions were relevant to Petitioner's credibility and were appropriate based on the evidence presented at trial. *See Hooper v.*

*Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002).  On direct examination, Petitioner testified that he had been diagnosed with HIV in 1995, that he had received treatment for the disease, and that a "medical directive" indicated that he had only six months to live. Tr.Vol.II at 223.   During cross-examination, the prosecutor challenged Petitioner's credibility by questioning him about his failure to disclose his HIV condition to jail authorities, and in response, Petitioner admitted that he did not inform the jailers of his HIV status during the booking process in February 2001. *Id.* at 246.  The prosecutor then questioned Petitioner about his legal action against the County for failing to treat his medical condition. *Id.* at 247.  Petitioner has not shown that the prosecutor's questions in this regard, which the OCCA found were properly directed to Petitioner's credibility, rendered his trial fundamentally unfair so as to deny him due process.

   D.  <u>Societal Alarm</u>

   Petitioner alleges that the prosecutor invoked societal alarm to prejudice the jury. First, he claims that the prosecutor "used the tragedy of September 11 in order to state that firemen are good people."  Petitioner's Brief at 41.  The record shows the following comment during *voir dire*:

> Firemen have been in the news.  I've got a lot of friends cops, firemen. Firemen got a good deal. Firemen are saving people. We have a lot of respect in our community, new respect for firemen.

Record, Tr.Vol.I at 49.  Next, Petitioner claims that the prosecutor improperly returned to this theme during closing argument.  The prosecutor pointed out that John Carpenter narrowly escaped serious injury and added: "He's our fireman.  He's representing our community.  He's helping people.  You don't try to run them over for no reason."  Record,

Tr.Vol.II at 261.  On direct appeal, the OCCA noted that this unobjected-to claim "did not amount to plain error affecting [Petitioner's] substantial rights."  Record, Ex. 3 at 3 n.1.

The Tenth Circuit has held that, "even '[a]n improper appeal to societal alarm typically does not amount to a denial of due process.'" *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir.  2002) (quoting *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000)); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir.1994) (holding "improper appeals to societal alarm" and requests for "vengeance for the community" do not amount to a denial of due process).  In this instance, the undersigned finds that the above comments, considered in light of the substantial evidence of Petitioner's guilt, did not serve to deprive Petitioner of a fair trial.

The undersigned finds that Petitioner has failed to show that the challenged remarks or questions rendered his trial fundamentally unfair.  *Donnelly*, 416 U.S. at 642-48.  Moreover, as discussed in connection with Ground Two, there was ample evidence to support the jury's finding that Petitioner was guilty of assault with a dangerous weapon, and as found by the OCCA, the record shows that Petitioner virtually conceded guilt on the three misdemeanor charges.  Accordingly, the OCCA's rejection of Petitioner's prosecutorial misconduct claims was not contrary to an unreasonable application of federal law.  It is therefore recommended that habeas relief be denied on Ground Four.

V.      Petitioner's Request for an Evidentiary Hearing

Petitioner requests an evidentiary hearing on his habeas petition, alleging that he is "actually innocent" of assault with a dangerous weapon.  Petitioner's Brief at 9-10.

According to Petitioner, "there was a failure to properly develop the factual basis for certain of his claims, but [] this failure was not due to any fault of Petitioner." *Id.* at 10. In support of his request for an evidentiary hearing, Petitioner alleges that "certain of his legal counsel's deficiencies should be noted in support of the issues which the Petitioner is raising in this action"; however, he admits that he did not raise a claim of ineffective assistance of counsel on direct appeal and further admits that he does not raise such claim in his habeas petition. *Id.*

Petitioner's request for an evidentiary hearing is assessed under 28 U.S.C. § 2254(e)(2)'s stringent requirements:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams* v. Taylor, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

Here, there is no evidence in the record that Petitioner requested an evidentiary hearing during direct appeal. Additionally, Petitioner admits that he did not raise a claim

of ineffective assistance of counsel on direct appeal, and he has filed no applications for post-conviction relief in an attempt to develop the factual basis of his claims of actual innocence and ineffective assistance of counsel.   Thus, he has not been diligent in seeking an evidentiary hearing, and therefore the requirements of § 2254(e)(2) must be satisfied.[15]   Petitioner does not allege or show that his claims rely on "a new rule of constitutional law . . ." or "a factual predicate that could not have been discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A).  Moreover, Petitioner does not show that the facts underlying the claim "would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of [assault with a dangerous weapon]."   28 U.S.C. § 2254(e)(2)(B).  Consequently, Petitioner is not entitled to an evidentiary hearing in federal court.  *Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002).

## RECOMMENDATION

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied.  As discussed above, it is also recommended that Petitioner's "Motion for Leave to Augment Propositional Argument No. II and Request for Evidentiary Hearings" [Doc. No. 26] be construed as a request to amend his petition and granted to the extent the claims raised therein have been

---

[15]If a habeas petitioner did not fail to develop the factual basis of a claim in State court, then § 2254(e)(2) is not applicable and a request for an evidentiary hearing is analyzed under the pre-AEDPA standard. *Bryan v. Mullin*, 335 F.3d 1207, 1214 (10th Cir. 2003) (*en banc*).  Under the pre-AEDPA standard, a habeas petitioner is entitled to an evidentiary hearing if "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Cannon v. Mullin*, 383 F.3d 1152, 1175 (10th Cir. 2004).  In the instant case, even if the Court determined that Petitioner was diligent in attempting to develop the factual basis for his claims, he would not be entitled to an evidentiary hearing because, as set forth in detail in this Report and Recommendation, his allegation of actual innocence has been contravened by the factual record in the case.

considered, and it is recommended that these claims be denied.   Further, it is recommended that Petitioner's request for an evidentiary hearing be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 17th of October, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 27th day of September, 2005.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE